v.

**STATE of Alaska, Appellee.**

No. S–6756.

Supreme Court of Alaska.

June 21, 1996.

James M. Hackett, Fairbanks, for Appellant.

Nora King, Assistant Attorney General, Fairbanks, and Bruce M. Botelho, Attorney General, Juneau, for Appellee.

Before RABINOWITZ, MATTHEWS, COMPTON and EASTAUGH, JJ.

## OPINION

RABINOWITZ, Justice.

## I. INTRODUCTION

R.R., the mother of T.M., A.M., S.M., and M.H., claims that her children were improperly removed from her custody by the superior court. Her appeal focuses primarily on her youngest child, M.H. She alleges that the superior court made inadequate findings under CINA Rule 15(g), that the superior court erroneously concluded that M.H. was a "child in need of aid," and that the statute authorizing the superior court to appoint guardians is unconstitutionally vague.

## II. FACTS AND PROCEEDINGS

At a hearing on December 18, 1992, the superior court awarded the state temporary custody of R.R.'s three oldest children, T.M., A.M., and S.M. Subsequently, this custody arrangement was extended numerous times, apparently depriving R.R. of custody continuously since that time. R.R.'s fourth child, M.H. was born on January 10, 1994. The state assumed emergency custody over M.H. on March 15, 1994. This arrangement also was extended several times. The superior court found M.H. to be a child in need of aid under AS 47.10.010(a)(2)(A), and shortly thereafter appointed guardians for all of the children.

The superior court additionally found that R.R.'s "personality disorder is of sufficient magnitude that it interferes with her percep-

tions of reality and her ability to parent her children and maintain a consistent and stable relationship with them." The findings basically characterize her as impulsive, quick-tempered, selfish, and generally difficult to deal with, and the superior court further found that "[t]here is a danger that if [R.R.] had sole custody of [M.H.], [M.H.] would be adversely impacted and likely would also require counseling in the future." The superior court ultimately concluded that "[R.R.] is currently unable to provide for the physical, emotional, and social needs of her children...."

The superior court then appointed R.R.'s sister and brother-in-law, Mary and Eric Heim, and her mother, Margaret Gilbert, as guardians of the children. The court opted for a guardianship arrangement, as opposed to a termination of R.R.'s parental rights, in "the hope that reunification might be possible to some degree in the future." No time durations were established for the guardianships however, and no specific arrangements aimed towards achieving a reunification were established. All decisions in this respect were basically left to the childrens' guardians.

This appeal followed.

## III. DISCUSSION

A. Was the superior court's finding that "[r]easonable efforts were and are being made to prevent removal of the child from her mother's home" sufficient under CINA Rule 15(g)? [1]

CINA Rule 15(g) requires that prior to removing a child from the child's home, the trial court must make a finding as to "whether, under the circumstances of the case, reasonable efforts were made to prevent or eliminate the need for removal of the child from the home and to make it possible for the child to return home...." This court has held that such a finding of reasonableness must be made explicitly by the superior

---

1. Whether the findings were adequate to satisfy the CINA rule is a question of law. This court interprets statutory language and rule language, such as the requirements of CINA Rule 15(g), on a de novo basis. Langdon v. Champion, 745 P.2d 1371, 1372 n. 2 (Alaska 1987). The question of whether or not the findings were erroneous is reviewed only for clear error. A.H. v. State, 779 P.2d 1229, 1231 (Alaska 1989).

court. *In the Matter of J.L.F.*, 828 P.2d 166, 172 (1992) (overruled on other grounds). R.R. claims that since the superior court's findings "mention only in passing that reasonable efforts were made" and do not "sufficiently address the reasonableness of any ... efforts to return the children home," the findings are inadequate under CINA Rule 15(g).

Since all that the rule or our cases require, however, is that the trial court make a finding that the treatment plan was reasonable, and since the superior court in this case made such a finding, we conclude that R.R.'s claim is without merit. It is clear from the superior court's findings contained in two separate orders that the court considered and evaluated the reasonableness of the efforts in this respect.[2] This is all that is required under CINA Rule 15(g).

■ As for the claim that the superior court did not specifically address efforts at returning M.H. to her mother's home, we think that such efforts are logically encompassed within the treatment plan that was evaluated by the superior court and need not be separately addressed. CINA Rule 15(g) does not require that each element of the "reasonable efforts" be discussed individually and in detail.

B. *Was the superior court's adjudication of M.H. as a child in need of aid under AS 47.10.010(a)(2)(A) proper?*[3]

■ M.H. can properly be considered a child in need of aid under AS 47.10.010(a)(2)(A) only if she "[has] no parent, guardian, custodian, or relative caring or willing to provide care."[4] Recently we held that "a child may not be adjudicated CINA under [subsection (A)] on the grounds that the child's parent or caregiver is unable to care for the child if the parent or caregiver is willing to care for the child. A parent's or caregiver's ability to care may be considered under the specific, explicit standards of AS 47.10.010(a)(2)(B)-(F)." *In re S.A. and D.A.*, 912 P.2d 1235, 1242 (Alaska 1996). More recently in *In re J.L.F. and K.W.F.*, 912 P.2d 1255, 1260–1261 (Alaska 1996), we explained our holding in *In re S.A. and D.A.* in the following manner:

This holding was based on the plain language of subsection (A). "Subsection (A) allows a CINA adjudication if there is no 'parent ... caring *or* willing to provide care.' Subsection (A) does not state 'having no parent ... caring *and* willing to provide care.'" 912 P.2d at 1239. Relevant to the trial court's finding that the definition of care or caring impliedly makes ability to care relevant under subsection (A) we stated:

The State has argued that subsection (A) covers ability to care because AS 47.10.990(1) states, " 'care' or 'caring' under AS 47.10.010(a)(2)(A) ... means to provide for the physical, emotional, mental, and social needs of the child." See *F.T.* [*v. State*, 862 P.2d 857, 861 & n. 5 (Alaska 1993) ]; *J.L.F.*, 828 P.2d at 169. However, plugging the definition in AS 47.10.990(1) into subsection (A) results in the following: "having no parent ... providing for the physical, emotional, mental, and social needs of the child *or*

---

**2.** The superior court wrote, "DFYS made reasonable efforts to preserve the family but was frustrated by [R.R.'s] conduct and personality disorder." It also wrote, "Reasonable efforts were and are being made to prevent removal of the child from her mother's home...."

**3.** This is ultimately a question of statutory interpretation. Since it is a question of law, the court applies its independent judgement. *Borg–Warner Corp. v. Avco Corp.*, 850 P.2d 628, 631 n. 8 (Alaska 1993).

**4.** This statute provides:

*Jurisdiction.* (a) Proceedings relating to a minor under 18 years of age residing or found in the state are governed by this chapter, except as otherwise provided in this chapter, when the court finds the minor

. . . .

(2) to be a child in need of aid as a result of (A) the child being habitually absent from home or refusing to accept available care, or having no parent, guardian, custodian, or relative caring or willing to provide care, including physical abandonment by
(i) both parents
(ii) the surviving parent, or
(iii) one parent if the other parent's rights and responsibilities have been terminated under AS 25.23.180(c) or AS 47.10.080 or voluntarily relinquished.
AS 47.10.010(a)(2)(A).

*willing to provide* for the physical, emotional, mental, and social needs of the child." The statute still would not require ability to care—willingness is enough.

912 P.2d at 1239.

Our decision in *S.A. and D.A.* was not based solely on the plain language of subsection (A), however. We also reviewed the structure of AS 47.10.010(a)(2) and concluded that reading an ability to care component into subsection (A) would give the State broader power to assume custody of children than intended by the legislature, and would tend to undermine the specific grounds expressed in subsections (B) through (F). We stated:

> An analysis of the structure and purposes of the entirety of AS 47.10.010(a)(2) shows that while ability to care is relevant under subsections (B) through (F) of the statute, it is not relevant under subsection (A), for three main reasons. First, the State's interpretation of subsection (A) would permit CINA adjudications based on parenting deficiencies much less severe than those covered under AS 47.10.010(a)(2)(B)-(F). Second, unlike subsection (A), subsections (B) through (F) set clear, specific standards for adjudicating a child CINA based on a parent's inability to care. Third, permitting ability to care to be considered under subsection (A) would make subsections (B) through (F) virtually superfluous.
>
> . . . .
>
> Under subsections (B) through (F), only serious forms of parental misconduct can support a CINA adjudication. Subsection (B) deals with failure to provide needed medical treatment. Subsection (C) concerns "substantial physical harm" caused by parental conduct. Subsection (D) addresses sexual abuse.

Subsection (E) is about parental encouragement of criminal conduct. And subsection (F) speaks of "substantial physical abuse or neglect." The legislature thus intended for the State to be able to assume custody of minors only to remedy severe parenting deficiencies and prevent significant harm to children.

But the State's reading of subsection (A) would give the State the power to assume custody over children for much less serious types of parental misconduct and harm to children. The State would define ability to care as the ability to provide for the physical, emotional, mental, and social needs of a child, relying on AS 47.10.990(1). *See F.T.*, 862 P.2d at 861 & n. 5; *J.L.F.*, 828 P.2d at 169. This interpretation would permit the State to assume custody over any child who had needs the child's parents could not meet. Applied to the facts of this case, the State's interpretation would justify terminating N.A.'s parental rights on the grounds that S.A. and D.A. would not "meet their potential" with N.A. because she would not be able to satisfy their needs for "structure and consistency."

912 P.2d at 1240–41. Our decision in *S.A. and D.A.* was made in the context of a parent who was willing to provide care. It applies as well to this case where there is a relative willing to provide care because the terms "parent" and "relative" are parallel in subsection (A).

(Footnote omitted.)

In light of the fact that M.H. is not a child with "no parent, guardian, custodian, or relative caring or willing to care" for her, the superior court's finding that she is a child in need of aid under AS 47.10.010(a)(2)(A) must be vacated pursuant to our decisions in *S.A. and D.A.* and *J.L.F. and K.W.F.*[5]

---

5. Subsections (C) and (F) of AS 47.10.010(a)(2) provide for jurisdiction over children who are in need of aid as a result of

(C) the child having suffered substantial physical harm or if there is an imminent and substantial risk that the child will suffer such harm as a result of the actions done or conditions created by the child's parent, guardian,

or custodian or the failure of the parent, guardian, or custodian to adequately supervise the child;

[or]

(F) the child having suffered substantial physical abuse or neglect as a result of conditions created by the child's parent, guardian, or custodian.

### C. Is the language of AS 13.26.045 unconstitutionally vague? [6]

■ R.R. claims that the following language of AS 13.26.045 is unconstitutionally vague:

> The court may appoint a guardian for an unmarried minor if all parental rights of custody have been terminated or suspended by circumstances or prior court order.

Specifically, R.R. contends that both the phrase "all parental rights," and the phrase "suspended by circumstance" are impermissibly vague. We disagree with both contentions.

■ There are essentially three types of defects that can render a statute unconstitutionally vague. The first is that the statute chills the exercise of First Amendment rights, the second is that it fails to give adequate notice of prohibited conduct, and the third is that its imprecision "encourages arbitrary enforcement." *Summers v. Anchorage*, 589 P.2d 863, 866–67 (Alaska 1979). Here, as in *Williams v. State, Dep't of Revenue*, 895 P.2d 99, 105 (Alaska 1995), these factors have little or nothing to do with the present case. The statute does not bear on First Amendment rights, it prohibits no conduct and gives rise to no civil or criminal enforcement action. If there is a constitutional bar of vagueness applicable to a statute like this, all that it requires is "legislative language which is not so conflicting and confused that it cannot be given meaning in the adjudication process." *Id.* This standard is readily met as the statute merely sets out circumstances under which a guardian can be appointed; the definition of such circumstances is found elsewhere in the statutes. Merely because judges are given discretion to appoint guardians does not mean that the statute is unconstitutionally vague. *See Coghill v. Coghill*, 836 P.2d 921, 929 (Alaska 1992) (holding exceptions such as "good cause" not unconstitutionally vague "so long as judges and hearing commissioners continue to exercise their discretion to achieve equitable results consistent with existing case law").

## IV. CONCLUSION

R.R.'s claim that the superior court's findings were insufficient under CINA Rule 15(g) and her claim that AS 13.26.045 is unconstitutionally vague are without merit. Her claim that the superior court erred in ruling that M.H. was a child in need under AS 47.10.010(a)(2)(A), however, is valid. Since M.H. is not a child with "no parent, guardian, custodian, or relative caring or willing to care" for her, the superior court's finding that she was a child in need of aid under AS 47.10.010(a)(2)(A) is erroneous under our decisions in *S.A. and D.A.* and *J.L.F. and K.W.F.* The judgment of the superior court is VACATED and the case REMANDED for further proceedings consistent with this opinion. [7]

EASTAUGH, Justice, with whom COMPTON, Justice, joins, concurring.

I agree with Parts III.A and III.C of the court's opinion. Although I also agree with the conclusion, found in Part III.B of the court's opinion, that AS 47.10.010(a)(2)(A) does not provide jurisdiction in this case, I disagree with the court's Part III.B analysis of the jurisdictional issue.

The court states that

> [i]n light of the fact that M.H. is not a child with "no parent, guardian, custodian, or relative caring or willing to care" for her, the superior court's finding that she is a

---

On remand it is open to the state to demonstrate that R.R.'s conduct and mental problems have rendered M.H. a child in need of aid under the language of these provisions.

**6.** It appears to be uncontested that the vagueness issue was not raised at trial. Accordingly this court need only review it for plain error. *In re L.A.M.*, 727 P.2d 1057, 1059 (Alaska 1986).

**7.** If on remand the state proves that M.H. is a child in need under either (a)(2)(C) or (a)(2)(F), or any other subsection found applicable, the superior court should clarify the exact nature of any guardianship arrangement it orders. In regard to the superior court's former order, R.R. claimed that her parental rights have in fact been terminated. This argument is based on the fact that no provision was made for the termination of the guardianship arrangement within any definite period of time or upon the happening of any event, and since "the relationship between [R.R.] and Ms. Gilbert and the Heims is very strained and only limited contacts are feasible."

child in need of aid under AS 47.10.010(a)(2)(A) must be vacated pursuant to our decisions in *S.A. and D.A.* and *J.L.F. and K.W.F.*[8]

Op. at 757. The court apparently does not disagree with the superior court's finding that "[R.R.] is currently unable to provide for the physical, emotional, and social needs of her children...." Op. at 755. However, because the court believes that ability is irrelevant to jurisdiction under AS 47.10.010(a)(2)(A), and because R.R. was willing to care for M.H.,[9] the court finds that jurisdiction is inappropriate under subsection (A). Op. at 756–757.

I disagree with the court's analysis because I continue to believe that ability to care is relevant to jurisdiction under subsection (A). *See In re S.A. & D.A.*, 912 P.2d 1235, 1242 (Alaska 1996) (Eastaugh, J., concurring in part and dissenting in part); *In re J.L.F. & K.W.F.*, 912 P.2d 1255, 1266 (Alaska 1996) (Eastaugh, J., concurring in part and dissenting in part). Ability is relevant under AS 47.10.010(a)(2)(A), because that subsection is intended to protect children who do not receive necessary care. The caregiver's professed willingness to provide care does not alone ensure that the child will receive the necessary care as intended under AS 47.10.010(a)(2)(A).

In this case, despite R.R.'s willingness to care for M.H., R.R. is demonstrably unable to care for the child. The superior court found that "if [R.R.] were to have custody of the children, their opportunity for positive growth would be compromised." The superior court also found that "[R.R.]'s personality disorder is of sufficient magnitude that it interferes with her perceptions of reality and her ability to parent her children and maintain a consistent and stable relationship with them." Although willing, R.R. is not able to provide necessary care for M.H. This inability defeats the central purpose of AS 47.10.010(a)(2)(A), which addresses the failure to provide care for a child. *See S.A. & D.A.*, 912 P.2d at 1243–44 (Eastaugh, J., con-

curring in part and dissenting in part). Because R.R. is not able to care for M.H., if there were no other eligible caregiver, I would hold that jurisdiction is appropriate under subsection (A).

Nonetheless, I agree that jurisdiction is inappropriate here, because there are relatives who are both willing and able to care for M.H. A "child is not in need of aid if some other eligible person stands ready to deliver that care in the future." *S.A. & D.A.*, 912 P.2d at 1244 (Eastaugh, J., concurring in part and dissenting in part). Mary and Eric Heim, R.R.'s sister and brother-in-law, and Margaret Gilbert, R.R.'s mother, are willing and able to care for M.H. The superior court found that they "possess those qualities necessary to care for and nurture" the child, and that they have "indicated a willingness to serve as co-guardians" for her. I consequently agree with the court's conclusion that it was error to grant jurisdiction under subsection (A).

---

8. The court does suggest that on remand the superior court may consider whether there is CINA jurisdiction under AS 47.10.010(a)(2)(C) or (F). Op. at 757 n. 5.

9. The superior court found that "[R.R.] sincerely desires the return of all her children" and that "[R.R.]'s intentions with regard to her children appear to be well-motivated."