E.H., Appellant,

v.

STATE of Alaska, DEPARTMENT OF HEALTH AND SOCIAL SERVICES, DIVISION OF FAMILY AND YOUTH SERVICES, Appellee.

No. S–9532.

Supreme Court of Alaska.

June 8, 2001.

Stuart G. Ross, Law Office of Stuart G. Ross, Anchorage, for Appellant.

Vennie E. Nemecek, Assistant Attorney General, Anchorage, and Bruce M. Botelho, Attorney General, Juneau, for Appellee.

Barbara L. Malchick, Deputy Public Advocate, and Brant McGee, Public Advocate, Anchorage, for Guardian ad litem.

Before FABE, Chief Justice,
MATTHEWS, EASTAUGH, and BRYNER, Justices.

## OPINION

BRYNER, Justice.

## I. INTRODUCTION

In 1996 the superior court granted the Department of Health and Social Services (the department) temporary custody of E.H.'s two sons, J.J.H. and J.M.H. The court adjudicated the boys children in need of aid (CINA) in 1997. In 1999 the department successfully petitioned for termination of E.H.'s parental rights. E.H. repeatedly moved for dismissal for lack of jurisdiction and argued that her children were not properly before Alaska courts. E.H. claims that the superior court erred by denying her motions to dismiss. Because the record demonstrates that the superior court's findings satisfying statutory jurisdictional requirements are not clearly erroneous, we affirm the termination of E.H.'s parental rights.

## II. FACTS AND PROCEEDINGS

During the spring of 1996, the department received reports of harm relating to E.H.'s two sons, J.J.H. and J.M.H. While investigation into those reports was underway, E.H. left Alaska with her sons. The family ended up in Edmonton, Alberta, homeless and in need of medical care. E.H. and her sons came to the attention of Canadian immigration authorities and a Canadian child protective worker, Carol Kanuka, who first obtained an apprehension order from a Canadian court and then temporary guardianship of the two boys. Upon learning that E.H. and her sons were United States citizens from Anchorage, Kanuka arranged for an Alaskan social worker, Stephanie Pinsly, to fly to Edmonton to retrieve the boys.

On August 28, 1996, Pinsly retrieved the boys from Edmonton and flew with them to Anchorage. On that same day, the department filed in superior court a petition for temporary custody of the boys and for adjudication that they were CINA. Pinsly had served E.H. with notice of the petition while in Edmonton. E.H. remained in Edmonton for about another month.

The superior court first heard the department's petition on August 30, 1996. The department, which had placed the children in foster care in Alaska, submitted an offer of proof describing the events that had transpired. The court accepted the department's offer of proof, found there was probable cause that the boys were CINA, and awarded temporary custody of the boys to the department.

The children remained in foster care in Alaska until the CINA trial, at which E.H. did not testify. At the CINA trial, the court heard from multiple witnesses who described their interactions with E.H. and her sons, discussed the condition of the children while they were in Edmonton, and recounted conversations in which E.H. had given inconsistent explanations for her presence in Edmonton. The superior court rejected argument by E.H.'s attorney that the case should be dismissed for lack of jurisdiction, concluding it had jurisdiction because E.H. and her sons were Alaska residents.

The court adjudicated both boys CINA. Under the Interstate Compact for the Placement of Children, the department sent the children to Oregon to live with J.J.H.'s father.

In 1999 the department petitioned for termination of E.H.'s parental rights. The petition recounted how the boys had come to the department's attention in 1996 and how E.H. had been deported back to Alaska from Canada. The termination petition included allegations based on information that the department had learned since the CINA adjudication. In response to the department's petition, E.H. again moved for dismissal arguing that, because her sons had been found in Canada, the jurisdictional requirements of the CINA statutes had not been satisfied.

The superior court denied E.H.'s motion. Instead, the court held a two-day trial. Testimony at the termination trial included information about E.H.'s circumstances in Edmonton and prior statements by E.H. that supported a finding that she and her sons retained their Alaska residency when they were in Canada. The superior court again

found that the children were Alaska residents and terminated E.H.'s parental rights.

E.H. appeals.

## III. DISCUSSION

On appeal E.H. asks whether the superior court committed reversible error by denying her motions to dismiss. She insists that the superior court exceeded its authority by entertaining CINA proceedings not permitted by AS 47.10.010. In a brief joined by the department, the guardian ad litem contends that the superior court correctly exercised subject matter jurisdiction.

### A. Standard of Review

■ We review the superior court's factual findings for clear error and will set them aside only when review of the entire record leaves us firmly convinced that a mistake has been made.[1] Whether the superior court's factual findings satisfy statutory requirements is a legal question which we answer for ourselves.[2]

### B. The CINA Statutes Were Satisfied.

E.H. contends that her sons were not properly before the court, because they were neither Alaska residents nor found in Alaska as required by CINA statutes. The superior court rejected that argument, repeatedly finding that the boys were Alaska residents.

■ When the department first petitioned for CINA adjudication in 1996, former AS 47.10.010(a) provided:

Proceedings relating to a minor under 18 years of age residing or found in the state are governed by [the CINA statutes] except as otherwise provided in this chapter, when the court finds the minor to be a child in need of aid.... [3]

In keeping with the protective purpose of the CINA statutes, we interpret former and current AS 47.10.010 to establish that CINA statutes govern proceedings relating to minor Alaska residents regardless of whether the minor is physically present in Alaska. Residency for purposes of statutes such as AS 47.10.010 is defined by AS 01.10.055, which specifies that Alaska residents retain their residency unless, during an absence, they establish residency elsewhere or are "absent under circumstances that are inconsistent with an intent" to make Alaska their home.[4]

E.H. does not dispute that her children were Alaska residents before they went to Edmonton. Instead, she argues that "[t]hey were no longer Alaska residents" when the state filed its first petition in this case. The guardian ad litem argues that the superior

---

1. See D.M. v. State, Div. of Family & Youth Servs., 995 P.2d 205, 207 (Alaska 2000); E.M. v. State, Dep't of Health & Social Servs., 959 P.2d 766, 768 (Alaska 1998); In re S.A., 912 P.2d 1235, 1237 (Alaska 1996).

2. See D.M., 995 P.2d at 207; E.M., 959 P.2d at 768; R.J .M. v. State, 946 P.2d 855, 861 (Alaska 1997); R.R. v. State, 919 P.2d 754, 755 n. 1 (Alaska 1996); Langdon v. Champion, 745 P.2d 1371, 1372 n. 2 (Alaska 1987).

3. By the time the department petitioned for termination of E.H.'s parental rights, the legislature had slightly changed the language of AS 47.10.010(a) to read:

Proceedings related to a child under 18 years of age residing or found in the state are governed by [the CINA statutes] when the child is alleged to be or may be determined by the court to be a child in need of aid under AS 47.10.011.

4. AS 01.10.055 reads:

(a) A person establishes residency in the state by being physically present in the state with the intent to remain in the state indefinitely and to make a home in the state.

(b) A person demonstrates the intent required under (a) of this section

(1) by maintaining a principal place of abode in the state for at least 30 days or for a longer period if a longer period is required by law or regulation; and

(2) by providing other proof of intent as may be required by law or regulation, which may include proof that the person is not claiming residency outside the state or obtaining benefits under a claim of residency outside the state.

(c) A person who establishes residency in the state remains a resident during an absence from the state unless during the absence the person establishes or claims residency in another state, territory, or country, or performs other acts or is absent under circumstances that are inconsistent with the intent required under (a) of this section to remain a resident of this state.

See Perito v. Perito, 756 P.2d 895, 898 (Alaska 1988).

court did not err in finding that the children retained their Alaska residency while they were in Canada.

We agree that the superior court's findings that the boys retained their Alaska residency are not clearly erroneous. E.H. claims that the only relevant evidence was her own testimony that she had gone to Edmonton with an intent to remain there. However, she mischaracterizes the record, which amply supports a finding of Alaska residency.

The state sought temporary custody of E.H.'s sons in August 1996. At the temporary custody hearing, the department offered to prove that, upon discovering that E.H. and her sons were Alaska residents, Canadian authorities made arrangements with the department for the boys' return to Alaska. The department reported that, at the time of the hearing, the children were temporarily in Alaska foster care, and that the Canadian court that had originally issued an apprehension order naming a Canadian social worker as temporary guardian of the boys would dismiss its case and defer to Alaska's jurisdiction. The superior court accepted the department's offer of proof and found there was probable cause that the boys were CINA.

The boys remained in foster care in Alaska until they were adjudicated CINA. At the CINA trial, the department offered evidence consistent with a finding of residency. Multiple Canadian public servants testified that E.H. and her sons had not established a home in Edmonton and seemed to be in Edmonton merely by chance. Pinsly, the social worker who brought E.H.'s sons back from Edmonton, testified that she had received reports of harm about E.H.'s sons back in May 1996. Pinsly also described conversations she had in August 1996 with E.H.'s sons who reported that they had only arrived in Edmonton because they happened to get a ride after their car broke down. The Alaska social worker assigned to the family at the time of the CINA trial testified that E.H. had returned to Anchorage after the department was awarded temporary custody of her sons. In closing argument, the department emphasized evidence that E.H. and

her family were in Canada illegally and were subject to deportation. E.H. did not testify at the CINA trial nor did she offer any evidence tending to support a finding that the children were not Alaska residents.

■ Overall, the testimony presented at the CINA trial supported the superior court's finding that E.H. and her sons were Alaska residents who were staying in a park in Edmonton. The superior court's finding of residency supporting the rejection of E.H.'s jurisdictional challenge is not clearly erroneous.

E.H. later testified at the termination trial that she went to Canada with the intent to remain there. But the department again presented witnesses who had previously testified at the CINA trial. They testified about E.H.'s circumstances in Edmonton and reported prior statements by E.H. that were consistent with her family's continued Alaska residency. The evidence presented at the termination trial supported the superior court's renewed finding that E.H. and her sons remained Alaska residents while they were out of the state in 1996.

The superior court did not clearly err in finding that E.H.'s sons were Alaska residents as required by the CINA statutes or in declining to dismiss the case for lack of compliance with the CINA statutes.

### C. The Jurisdictional Statutes Were Satisfied.

In her motions to dismiss, E.H. repeatedly claimed that she was entitled to dismissal because Alaska courts lacked jurisdiction. As the guardian ad litem points out, statutes other than AS 47.10.010 establish the scope of the superior court's jurisdiction in cases such as this.

#### 1. The petition for temporary custody and CINA adjudication

In 1996 the department first petitioned to be given temporary custody and to have the two boys adjudicated CINA. At that time, the Uniform Child Custody Jurisdiction Act [5]

---

5. Former AS 25.30.010–.910.

(UCCJA) was in effect in Alaska. Former AS 25.30.020 provided as follows:

> (a) The superior court has jurisdiction to make a child custody determination by initial or modification decree if the conditions set out in any of the following paragraphs are met:
>
> (1) this state (A) is the home state of the child at the time of commencement of the proceeding, or (B) had been the child's home state within six months before commencement of the proceeding and the child is absent from this state because of removal or retention by a person claiming custody or for other reasons, and a parent or person acting as parent continues to live in this state; or
>
> (2) the child is physically present in this state and is a child in need of aid as defined in AS 47.10.990; or
>
> (3) it (A) appears that no other state would have jurisdiction under prerequisites substantially in accordance with (1) or (2) of this subsection, or another state has declined to exercise jurisdiction on the ground that this state is the more appropriate forum to determine the custody of the child, and (B) is in the best interest of the child that this court assume jurisdiction.
>
> (b) Except under (a)(2) and (3) of this section, physical presence in this state of the child, or of the child and one of the contestants, is not alone sufficient to confer jurisdiction on a court of this state to make a child custody determination.
>
> (c) Physical presence of the child, while desirable, is not a prerequisite for jurisdiction to determine the child's custody.

Jurisdiction under the UCCJA was determined as of the date that the petition was filed with the court.[6]

Alaska would have possessed jurisdiction as the children's home state under former AS 25.30.020(a)(1) if the boys had lived in Alaska for six consecutive months prior to the department's petition, with temporary absences counted as part of the six months.[7] As the guardian ad litem observes, although the superior court heard evidence that the department had received reports of harm prior to the family's departure, the record does not indicate how long E.H. and her sons had lived in Alaska before they went to Canada. It is possible that the children had not been in Alaska long enough for Alaska to be their home state as defined by former AS 25.30.900(5), thereby preventing the superior court from properly exercising jurisdiction under AS 25.30.020(a)(1).

However, even if Alaska did not have jurisdiction as the boys' home state, the superior court would still retain jurisdiction under former AS 25.30.020(a)(2) because the boys were present in Alaska and in need of aid on the day that the state filed its petition for temporary custody.

■ Additionally, jurisdiction existed under former AS 25.30.020(a)(3) if no other state had jurisdiction and it was in the boys' best interest for Alaska to hear the case. As the party claiming that Alaska courts lacked jurisdiction, E.H. bore the burden of presenting evidence demonstrating that another state had jurisdiction under a similar statute.[8] Because no such evidence was ever presented, we presume that no other state had jurisdiction and that the superior court had jurisdiction under former AS 25.30.020(a)(3) if it would be in the boys' best interest for Alaska courts to hear the case.

■ In making that best interest determination, we look to the purposes of UCCJA, which include channeling litigation to "the state with which the child and the child's family have the closest connection"[9] and dis-

---

**6.** *See Rexford v. Rexford,* 631 P.2d 475, 478 (Alaska 1980).

**7.** Former AS 25.30.900(5) defined "home state" as the state in which the child, immediately preceding the time involved, lived with the child's parents, a parent, or a person acting as parent, for at least six consecutive months, and, in the case of a child less than six months old, the state in which the child lived from birth with any of

the persons mentioned; periods of temporary absence of any of the named persons are counted as part of the six-month or other period[.]

**8.** *See Pinneo v. Pinneo,* 835 P.2d 1233, 1236 (Alaska 1992).

**9.** Former AS 25.30.010(3).

couraging "continuing controversies over child custody in the interest of greater stability of home environment." [10] In *B.J. v. J.D.* we referred to those statutory goals and determined that it was in the best interest of children living in Alaska and lacking a home state to have cases involving their custody be heard by Alaska courts. [11] In this case, E.H.'s sons lacked recent contacts with any jurisdiction other than Alaska and Canada, and they were subject to deportation from Canada. Under the circumstances, it was in their best interest to have their custody decided by Alaska courts. The superior court thus possessed jurisdiction under former AS 25.30.020(a)(3).

Because the requirements of former AS 25.30.020(a) were met, it was not error for the superior court to deny E.H.'s motion to dismiss the CINA petition for lack of jurisdiction.

### 2. *The termination petition*

In 1997 the superior court awarded the department custody of the two boys. The department sent the boys to live with J.J.H.'s father in Oregon through the Interstate Compact on the Placement of Children. [12] The department petitioned for termination of E.H.'s parental rights in June 1999.

By 1999 UCCJA had been supplanted by the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA), [13] which defines "child custody proceeding" to include CINA and termination of parental rights. [14] UCCJEA provides for exclusive, continuing jurisdiction as follows:

> Except as otherwise provided in AS 25.30.330, a court of this state that has made a child custody determination consistent with AS 25.30.300 or 25.30.320 has exclusive, continuing jurisdiction over the determination until
>
> (1) a court of this state determines that neither the child, the child and one parent, nor the child and a person acting as a parent have a significant connection with this state and that substantial evidence is no longer available in this state concerning the child's care, protection, training, and personal relationships; or
>
> (2) a court of this state or a court of another state determines that neither the child, nor a parent, nor a person acting as a parent presently resides in this state. [15]

Under AS 25.30.310(a), prior custody and CINA adjudications are "child custody determinations consistent with AS 25.30.300" that provided the superior court with continuing jurisdiction. [16] The court retained jurisdic-

---

**10.** Former AS 25.30.010(4).

**11.** 950 P.2d 113, 116 (Alaska 1997) (affirming superior court's assumption of jurisdiction to hear custody dispute involving child who had been living with her father in Alaska for less than six months).

**12.** *See* AS 47.70.010–.080.

**13.** *See* AS 25.30.300–.910.

**14.** AS 25.30.909(4).

**15.** AS 25.30.310(a).

**16.** Like former AS 25.30.020(a), AS 25.30.300 creates jurisdiction for cases involving children whose home state is Alaska and children whose cases may not be heard elsewhere. AS 25.30.300 reads as follows:

> (a) Except as otherwise provided in AS 25.30.330, a court of this state has jurisdiction to make an initial child custody determination only if

(1) this state is the home state of the child on the date of the commencement of the proceeding;

(2) this state was the home state of the child within six months before the commencement of the proceeding and the child is absent from this state but a parent or person acting as a parent continues to live in this state;

(3) a court of another state does not have jurisdiction under provisions substantially similar to (1) or (2) of this subsection, or a court of the home state of the child has declined to exercise jurisdiction on the ground that this state is the more appropriate forum under provisions substantially similar to AS 25.30.360 or 25.30.370, and

(A) the child and the child's parents, or the child and at least one parent or a person acting as a parent, have a significant connection with this state other than mere physical presence; and

(B) substantial evidence is available in this state concerning the child's care, protection, training, and personal relationships;

(4) all courts having jurisdiction under the criteria specified in (1)-(3) of this subsection have declined to exercise jurisdiction on the ground

tion when the department petitioned for termination of E.H.'s parental rights unless one of two terminating conditions had occurred.[17]

The court's jurisdiction would have been terminated if an Alaska court had determined that

> neither the child[ren], the child[ren] and one parent, nor the child[ren] and a person acting as a parent [had] significant connection with this state and that substantial evidence [was] no longer available in [Alaska] concerning the child[ren]'s care, protection, training and personal relationships[.][18]

That terminating condition had not occurred when the department petitioned for termination of E.H.'s parental rights because, due to the department's custody of the boys and continuing obligations to the family, substantial evidence remained available in Alaska concerning the care, protection, training, and relationships of the boys.

Alternatively, the continuing jurisdiction would have been terminated if an Alaska court or a court of another state had determined that "neither the child, nor a parent, nor a person acting as a parent presently reside[d] in [Alaska]."[19] But under Article V of the Interstate Compact, through which E.H.'s sons were placed in Oregon, the boys retained constructive Alaska residency for jurisdictional purposes.[20] So when the department filed for termination of E.H.'s parental rights that second possible terminating condition had not occurred.

■ Because neither condition terminating the superior court's continuing jurisdiction

had occurred when the department petitioned for termination of E.H.'s parental rights, the superior court could properly hear the department's termination petition. The superior court did not err in denying E.H.'s motion to dismiss for lack of subject matter jurisdiction.

## IV. CONCLUSION

Because the statutory jurisdictional requirements were satisfied at each step of the litigation, we conclude that it was not error to deny E.H.'s motions to dismiss for lack of jurisdiction. We AFFIRM the superior court's termination of E.H.'s parental rights.

---

that a court of this state is the more appropriate forum to determine the custody of the child under provisions substantially similar to AS 25.30.360 or 25.30.370; or

(5) no court of another state would have jurisdiction under the criteria specified in (1)—(4) of this subsection.

(b) The provisions of (a) of this section are the exclusive jurisdictional bases for making a child custody determination by a court of this state.

(c) Physical presence of or personal jurisdiction over a party or a child is not necessary or sufficient to make a child custody determination.

**17.** *See* AS 25.30.310(a).

**18.** AS 25.30.310(a)(1).

**19.** AS 25.30.210(a)(2).

**20.** AS 47.70.010, Article V.(a) provides in relevant part:

> The sending agency shall retain jurisdiction over the child sufficient to determine all matters in relation to the custody, supervision, care, treatment and disposition of the child which it would have had if the child had remained in the sending agency's state, until the child is adopted, reaches majority, becomes self-supporting or is discharged with the concurrence of the appropriate authority in the receiving state.